UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| JOSHUA NEWPORT,<br><br>　　　　　　　　　　Plaintiff,<br>　v.<br>CITY OF SPARKS, a municipal corporation; OFFICER E. MARCONATO, OFFICER B. YEE, OFFICE ROWE, OFFICER LAKE, SERGEANT TRACY,<br><br>　　　　　　　　　　Defendants. | Case No. 3:12-cv-00621-MMD-WGC<br><br>ORDER<br><br>(Def's Motion for Summary Judgment – dkt. no. 76) |

**I.　SUMMARY**

Plaintiff Joshua Newport ("Newport") was arrested for suspected vehicle theft after he attempted to evade law enforcement in a vehicle and on foot. He claims the arresting officers used excessive force in securing his arrest and sues the officers ("Officers"), as well as their employer, the City of Sparks ("Sparks" or "the City"). Before the Court is Defendants' Motion for Summary Judgment ("Motion"). (Dkt. no. 76.) Plaintiff filed a response (dkt. no. 85) and Defendants filed a reply (dkt. no. 86.) For the reasons set out below, Defendants' Motion is granted in part and denied in part.

**II.　BACKGROUND**

Newport brings this suit, *pro se*, alleging that several officers of the Sparks Police Department ("Sparks PD") violated his constitutional rights when they used force to arrest him.  The following facts are undisputed, except when otherwise noted.

On November 28, 2010, Sparks PD located a vehicle that had been reported stolen in the parking garage of the Nugget Casino ("the Nugget"). Sparks dispatch cautioned that the suspect, Newport, was believed to be armed and dangerous. (Dkt. no. 76 at 11.) Several Sparks police officers arrived at the Nugget and began setting up a perimeter around the parking garage. (*Id.*) While they were establishing a perimeter, Newport drove the car out of the garage. (*Id.*) Four police vehicles, driven by the Officers, followed him with their lights and sirens activated. (Dkt. no. 76 at 11; dkt. no. 85 at 7.) The Officers employed a precise immobilization technique ("PIT maneuver"); Newport lost control of his car, and crashed into an oncoming police cruiser. (Dkt. no. 85 at 7.) A second police cruiser then crashed into Newport's vehicle from behind. (*Id.*)

Officer Marconato approached Newport's vehicle with his gun drawn, and Newport attempted to flee from the scene. (*Id.* at 8.) Officer Marconato ordered Newport to stop, and Newport complied. (*Id.*) Officer Rowe then tackled Newport to the ground. (*Id.*) Newport, at least to some extent, struggled and fought with Officer Rowe and the other Officers as they came to Officer Rowe's aid. (*Id.* at 27-30; dkt. no. 76-10 at 16-17.) Officer Rowe placed Newport in what is alternately described as a headlock or a chokehold. (*Id.*; dkt. no. 45 at 5.) Newport briefly lost consciousness due to being choked. (Dkt. no. 45 at 6-7.) Officer Yee placed his knee on Newport's back and struck him in the ribs while attempting to place Newport's hands behind his back. (Dkt. no. 85 at 8.) Officer Marconato holstered his weapon and sat on Newport's legs and helped place Newport's hands behind his back. (*Id.*)

While the officers were attempting to place Newport in handcuffs, Officer Lake warned that he was going to fire his taser, and then did so. (*Id.* at 9; dkt. no. 76 at 25.) The taser's electrodes struck Newport in his abdomen. (Dkt. no. 45 at 6). The parties have differing versions of the events that followed. Defendants claim that Newport continued to struggle through the taser cycle and Officer Lake fired the taser a second time, after which Newport became compliant and the Officers were able to apply handcuffs. (Dkt. no. 75 at 25.) Newport claims that the Officers were able to put him in

2

handcuffs after firing the taser once, and that Officer Lake fired the taser a second time while he was already handcuffed. (Dkt. no.45 at 6-7.)

In any event, Newport was then loaded into an ambulance and taken to Renown Medical Center. (*Id.*) The paramedics' report indicates that Newport had abrasions and swelling around his left eye, taser dart marks on his abdomen, and an obvious injury to his right arm. (Dkt. no. 76-10 at 28.) A report from Renown Medical Center confirmed the existence of abrasions and a right elbow injury and further indicates that Newport was using methamphetamines. (Dkt. no. 85-4 at 2-3.) Newport subsequently pleaded guilty to eluding a police officer and possession of a stolen motor vehicle, and was sentenced to up to 120 months of imprisonment. (Dkt. no. 76 at 13.)

Newport filed this suit against Officers in their individual capacities and the City under 42 U.S.C. § 1983, alleging the force used to arrest him was excessive in violation of the Fourth Amendment.

### III.   LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l*

*Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp.*, 793 F.2d at 1103.

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

**IV.   DISCUSSION**

    **A.   Factual Disputes**

Plaintiff makes inconsistent allegations as to whether he was actively resisting arrest. In his filings, Newport alternatively suggests that he was compliant and was attempting to surrender to the Officers (*see* dkt. no. 45 at 5; dkt. no. 85 at 70), and he fought back against the Officers (*see* dkt. no. 85 at 27-30.) Defendants have produced police reports and an affidavit from a third-party witness indicating that Newport fought back violently against the Officers. (*See e.g.* dkt. no. 76-9 at 10-14; dkt. no. 76-10 at 16-17.) For purposes of summary judgment, this Court need not credit Newport's

inconsistent and overwhelmingly controverted claim that he did not fight back against the Officers. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (a district court need not accept allegations that are "blatantly contradicted by the record, so that no reasonable jury could believe it.")

The parties dispute the circumstances relating to the firing of the taser a second time. Newton claims that he was tasered a second time after he was already placed in handcuffs.[1] (Dkt. no. 45 at 6-7.) Defendants argue that because the record contradicts Newport's claim, his claim should be discredited for purposes of opposing their Motion. (Dkt. no. 76 at 26.) In addition to the statements of the Officers, Defendants cite to a Taser Firing Report showing that the two cycles were discharged fifteen seconds apart and the statement of a third party witness stating that an ambulance arrived at the scene just as the Officers applied handcuffs to Newport. (*Id.* at 25-26.) Neither of these pieces of evidence is inconsistent with a scenario in which the Officers applied the taser to Newport after he was placed in handcuffs. It is unclear why it would take longer than fifteen seconds to apply handcuffs to Newport, especially when crediting his account that

---

[1] Newport's version of the events is supported by his sworn Complaint and sworn response brief. (Dkt. nos. 45, 85.) These documents are treated like declarations and may be considered as evidence when evaluating summary judgment. *See Johnson v. Meltzer*, 134 F.3d 1393, 1400 (9th Cir. 1998) ("Like a verified complaint, a verified motion functions as an affidavit. Accordingly, the facts that [the plaintiff] set forth in his motion are evidence to be considered when deciding a motion for summary judgment.") (citations omitted); *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (finding that courts must consider a *pro se* party's contentions offered in motions and pleadings as evidence in his opposition to the motion for summary judgment "where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [he] attested under penalty of perjury that the contents of the motions or pleadings are true and correct."). Moreover, "declarations are often self serving,and this is properly so because the party submitting it would use the declaration to support his or her position." *Nigro v. Sears, Roebuck and Co.*, 784 F.3d 495, 497 (9th Cir. 2015) (citing *S.E.C. v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007) (holding that district court erred in disregarding declarations as "uncorroborated and self-serving"). The Court's job in determining summary judgment is not to make credibility assessments about the evidence. "Although the source of the evidence may have some bearing on its credibility, and thus on the weight it may be given by a trier of fact, the district court may not disregard a piece of evidence at the summary judgment stage solely based on its self-serving nature." *Id*. While the Court may disregard a self-serving declaration if only based on conclusions, Newport's declarations contain factual statements based on his observations. Unlike Newport's claims about resisting the Officers, his claim that he was tasered after being handcuffed is consistent throughout his filings.

he was compliant after the first taser firing. It is equally unclear why the arrival of an ambulance means that Officer Lake did not fire the taser a second time. Furthermore, Defendants' own evidence shows that an ambulance arrived only after Newport had complained of pain and the Officers removed his handcuffs in order to examine his arm. (Dkt. no. 76 at 12.) For the purposes of evaluating Defendants' Motion, this factual dispute must be resolved in Newport's favor.

### B.  Qualified Immunity

To prevail on his §1983 claim, Plaintiff must prove (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived him of a federal constitutional or statutory right. *Wood v. Ostrander*, 879 F.2d 583, 587 (9th Cir. 1989). Here, it is undisputed that the individual Officers were acting under color of state law.

Because Defendants have invoked qualified immunity, the Court must go through a two-part inquiry. First, the Court must ask whether the facts, viewed in the light most favorable to Plaintiff as the non-moving party, establish a Fourth Amendment Violation.[2] If the answer is yes, then the Court must ask whether the law governing the claim was clearly established at the time of the violation. *Saucier v. Katz*, 533 U.S. 194, 121 (2001); *Robinson v. Solano Cnty.*, 278 F.3d 1007, 1013 (9th Cir. 2002). The Supreme Court has instructed that district judges may use their discretion in deciding which qualified immunity prong to address first based on the circumstances of the case at issue. *See Pearson v. Callahan,* 555 U.S. 223 at 232, 236 (2009). Moreover, "a district court should decide the issue of qualified immunity as a matter of law when 'the material, historical facts are not in dispute, and the only disputes involve what inferences properly may be drawn from those historical facts.'" *Conner v. Heiman*, 672 F.3d 1126, 1131 (9th Cir. 2012) (quoting *Peng v. Mei Chin Penghu*, 335 F.3d 970, 979-80 (9th Cir. 2003)). Thus,

---

[2] The Complaint also makes references to violations of the Eighth Amendment, however, the events Newport describes concern his arrest rather than his incarceration, and are therefore only cognizable under the Fourth Amendment.

6

when factual disputes exist on issues necessary to decide the issue of qualified immunity for excessive force, summary judgment is appropriate only if the defendants are entitled to qualified immunity on the facts as alleged by the non-moving party. *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007).

The Court will address both prongs of the qualified immunity inquiry.

### 1. Whether the Individual Defendants Violated Newport's Rights

To determine whether the use of force by the law enforcement officers was excessive under the Fourth Amendment, a court must assess whether it was objectively reasonable "in light of the facts and circumstances confronting [the officers], without regard to their underlying intent or motivation." *Graham v. Conner*, 490 U.S. 386, 397 (1989). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion of the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotations omitted). In this analysis, the Court must consider the following factors: (1) the severity of the crime at issue; (2) whether Newport posed an immediate threat to the safety of the officers or others; and (3) whether Newport actively resisted arrest. *Id*; *see also Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 921 (9th Cir. 2001). The Ninth Circuit has also instructed that the "quantum of force" used to arrest the plaintiff may be a relevant factor. *Luchtel v. Hagemann*, 623 F.3d 975, 980 (9th Cir. 2010). The quantum of force factor is useful in this case, where the Officers used various methods of force to arrest Newport. While these factors act as guidelines, "there are no per se rules in the Fourth Amendment excessive force context." *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir.2011) (en banc).

The Ninth Circuit has repeatedly recognized that excessive force cases are rarely suited for summary judgment. "Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Santos v. Gates*,

287 F.3d 846, 853 (9th Cir. 2002); *see also Liston v. County of Riverside*, 120 F.3d 965, 976 n. 10 (9th Cir. 1997) (as amended) ("We have held repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury.").

### a. Severity of Crime at Issue

Newport was suspected of, and later pleaded guilty to, possession of a stolen vehicle and eluding a police officer.[3] These offenses, while serious, may not necessarily be dangerous. However, fleeing in a vehicle at high speeds to avoid law enforcement as Newport did here presented a dangerous situation. The Supreme Court and the Ninth Circuit have repeatedly recognized that a high speed chase can pose "grave public safety risk[s]." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2022 (2014); *Bingue v. Prunchak*, 512 F.3d 1169, 1176 (9th Cir. 2008) ("the sheer velocity of a high-speed chase necessarily converts each situation into a genuine emergency."). Based on these facts, the Court finds that the crimes at issue were relatively severe.

### b. Threat to Police Officers

The officers at the scene were advised that Newport should be considered armed and dangerous. (Dkt. no. 76 at 11.) Newport had a history of encounters with the Sparks PD. Every officer at the scene had previously been involved with either domestic violence calls or SWAT raids focused on Newport. (*Id.* at 16-17.) In addition, Newport was attempting to flee in his vehicle and crashed into a police car at the scene. Based on these facts, the Court finds that the Officers would be objectively reasonable in believing that Newport posed a threat to their safety.

### c. Resisting Arrest

Newport does not dispute that he fled law enforcement in a vehicle and on foot. As discussed, Newport has argued, with some inconsistency, that he did not resist the

---

[3]Newport was also wanted on at least two other outstanding warrants. (Dkt. no. 76-9 at 11.) It is unclear, however, whether the Officers were aware of those warrants. Newport argues that he did not steal the car in question, and that Sparks PD engaged in a conspiracy to produce a fraudulent police report regarding the stolen vehicle. (Dkt. no. 85 at 6.) This allegation is unsupported by evidence and also belied by Newport's guilty plea.

8

Officers attempting to arrest him. (*See supra* at Sect. IV(A).) This argument is undermined by his own response brief and by the evidence Defendants have offered in support of their Motion. (*See, e.g.*, dkt. no. 85 at 27-30; dkt. no. 76-9 at 10-14; dkt. no. 76-10 at 16-17.) Therefore, the Court finds that Newport was actively resisting arrest.

### d. Quantum of Force

Viewing the evidence in the light most favorable to Newport, Defendants used the following force to arrest him: a PIT maneuver; brandishing firearms, a tackle, multiple kicks and punches, a headlock or chokehold, and two deployments of a taser.

### i. PIT Maneuver

It is undisputed that Newport was fleeing law enforcement in his vehicle and driving at high speeds as he left the parking lot of the Nugget. Therefore, even if the Officers did employ a tactical maneuver in order to run him off the road, they were within the bounds of appropriate force clearly set out by the United States Supreme Court. "A police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death." *Scott*, 550 U.S. at 386. Defendants are entitled to summary judgement on this part of Newport's claim.

### ii. Brandishing Firearms

While brandishing a firearm may, in some circumstances, allows a reasonable fact finder to conclude that an officer has used excessive force in detaining a suspect, this is not such a case. The Officers were informed that Newport was believed to be armed and dangerous. Newport was suspected of stealing the vehicle that he crashed, and he admits to attempting to flee on foot. Under these circumstances, it was objectively reasonable for the Officers to draw their firearms. *See Anderson v. City of Bainbridge Island*, No. CV09-5797 RBL, 2010 WL 4723721, at *5 (W.D. Wash. Nov. 17, 2010) aff'd, 472 F. App'x 538 (9th Cir. 2012) (objectively reasonable for officers to draw their guns on suspect who fled in vehicle); *Hinz v. City of Everett*, No. C10-0347-JCC, 2010 WL 3212001, at *4 (W.D. Wash. Aug. 10, 2010) (reasonable for officer to draw his

gun based on belief suspect was armed). Defendants are similarly entitled to summary judgment on this part of Newport's claim.

### iii. Tackle, Punches, and Kicks

The parties generally agree that Officer Rowe tackled Newport and a number of the other Officers then kicked, punched, or kneed Newport while attempting to pull his hands behind his back and handcuff him. The parties also seem to agree that the Officers stopped striking Newport once they were able to place him in handcuffs.

"Neither tackling nor punching a suspect to make an arrest necessarily constitutes excessive force." *Blankenhorn,* 485 F.3d at 477. The question is whether a juror could find such force unreasonable under the circumstances. In *Blankenhorn*, the Ninth Circuit held that a reasonable juror could find that officers' gang tackling and punching an uncooperative but non-threatening misdemeanor suspect was an unreasonable and excessive use of force. Indeed, courts often deny summary judgment on behalf of officers who have punched or kicked suspects when there is little or no evidence that the suspect posed a threat, or if the suspect is already subdued. *See, e.g., Koiro v. Las Vegas Metro. Police Dep't*, 69 F. Supp. 3d 1061, 1069 (D. Nev. 2014) (denying summary judgment where off duty officer pushed a suspect "from behind into the bushes and began punching him in the stomach, sides and back of the head" with no reason to believe there was an immediate threat to anyone's safety); *Phelps v. Coy*, 286 F.3d 295, 302 (6th Cir.2002) (holding that a police officer's tackling of a handcuffed suspect, hitting him in the face twice, and banging his head on the floor three times, was unconstitutional).

However, when a suspect is believed to be a threat based on objective evidence, or when a suspect is violently resisting, officers who punched or kicked a suspect in order to restrain them may be entitled to summary judgment on a subsequent excessive force claim. *See, e.g., Husbands ex rel. Forde v. City of New York*, 335 F. App'x 124, 129 (2d Cir. 2009) ("One punch causing no injury to a suspect who is resisting being put in handcuffs does not rise to the level of excessive force."); *Williams v. Ingham*, 373 F.

1  App'x 542, 548 (6th Cir. 2010) (delivering closed–fist blows to suspect's back and applying a taser after suspect resisted arrest following high speed car chase was objectively reasonable); *Mobley v. Palm Beach Cty. Sheriff Dep't*, 783 F.3d 1347, 1355 (11th Cir. 2015) ("striking, kicking, and tasing the resisting and presumably dangerous suspect in order to arrest him were not unreasonable uses of force" against suspect who had led officers on high speed chase and struck an officer with his vehicle.)

Given that Newport had just crashed a stolen vehicle into a police car, attempted to elude the Officers on foot, was thought to be armed and dangerous, and was resisting the Officers' attempts to place him in handcuffs, the Court finds that no reasonable juror could find several punches and kicks to amount to excessive force. This conclusion is supported, importantly, by the fact that the Officers ceased striking Newport as soon as he was restrained. Defendants' Motion is granted in relation to this part of Plaintiff's claim.

### iv. Headlock or Chokehold

Defendants deny that Newport was ever placed in a chokehold. Alternatively, they argue that the chokehold was unintentional, and therefore did not amount to a constitutional violation. (Dkt. no. 76 at 21-22.) As a third alternative, Defendants argue that Officer Rowe was justified in using a chokehold, a technique that various courts have described as lethal force, because he had reason to believe that Newport posed a serious threat of harm. (Dkt. no. 86 at 13.)  In sum, Defendants' argument is that a chokehold was not used; if it was used, it was unintentional; and if intentional, it was reasonable under the circumstances.

Defendants argue that Newport has not produced any evidence that Officer Rowe placed him in a chokehold. (Dkt. no. 76 at 21) As discussed, *supra*, Newport has produced two sworn documents (dkt. nos. 45, 85) alleging that Officer Rowe choked him. This evidence is sufficient to create a genuine dispute about a material fact. In addition, whether Officer Rowe choked Newport intentionally or unintentionally (if at all), and whether he reasonably perceived that Newport presented a serious threat of harm, are

material questions of fact not appropriate for resolution at this stage. *See Blankenhorn*, 485 F.3d at 477.

Finally, the Court cannot find, as a matter of law, that the undisputed facts clearly support the use of lethal force against Newport. If a jury found that Officer Rowe choked Newport intentionally, it could also find that choking him was an unreasonable use of force under the circumstances presented here. *Compare Coley v. Lucas Cty., Ohio*, 799 F.3d 530, 541 (6th Cir. 2015) ("Chokeholds are objectively unreasonable where an individual is already restrained or there is no danger to others.") *with Williams v. City of Cleveland, Miss.,* 736 F.3d 684 (5th Cir. 2013) (chokehold was reasonable on fleeing suspect who fought officers, didn't respond to taser, and reached for officer's gun).

Defendants have not shown a lack of genuine disputes of material facts in regards to Officer Rowe's headlock or chokehold of Newport. Therefore, their Motion is denied as to this aspect of Plaintiff's claim.

**v.     Taser**

The Ninth Circuit has described tasers as a kind of "intermediate, significant level of force." *Mattos v. Agarano*, 661 F.3d 433, 443 (9th Cir. 2011) (quoting *Bryan v. MacPherson* 630 F. 3d 805, 826 (9th Cir. 2010)). The Ninth Circuit has also held that, when evaluating whether the use of a taser is reasonable, an officer's failure to warn that he or she is about to deploy the taser weighs in favor of finding the use of force unreasonable. *Id.* at 451.

Officer Lake gave a warning and fired his taser the first time as Newport was struggling with the other Officers. For many of the same reasons it was objectively reasonable for the Officers to kick and punch Newport to restrain him, it was objectively reasonable for Officer Lake to fire his taser the first time. This conclusion is further supported by the uncontested fact that Officer Lake warned Newport he was about to fire his taser.

Newport alleges that Officer Lake fired his taser a second time after Newport was subdued and placed in handcuffs. Defendants deny this claim, but do not argue that, if

12

true, it would constitute an unreasonable use of force. The Court agrees that firing a taser at a suspect after the suspect had been restrained, and was no longer posing a threat, qualifies as an objectively unreasonable use of force. Defendants have not shown that there is no genuine material issues of facts in regards to Officer Lake's second firing of the taser. Therefore their Motion is denied with respect to the firing of the taser a second time.

### 2. Whether the Rights at Issue Were Clearly Established

The Court has identified, based on a reading of the facts in the light most favorable to Newport, that a reasonable jury could find two instances of excessive uses of force in violation of the Fourth Amendment: a chokehold employed by Officer Rowe and the second taser firing by Officer Lake. The Court must next determine whether the law governing the claim was clearly established at the time of the violation. *Saucier*, 533 U.S. at 121.

"A [g]overnment official's conduct violates clearly established law when, at the time of the challenged conduct, [t]he contours of [a] right [are] sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd,* 131 S.Ct. 2074, 2083 (2011) (quotation marks and citation omitted). The Supreme Court has cautioned courts "not [to] define clearly established law at a high level of generality." *Id.* at 2084; see also *City & Cnty. of San Francisco v. Sheehan,* ——U.S. ——, ——, 135 S.Ct. 1765 (2015). However, courts "do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 131 S. Ct. at 2083.

The Court must ask whether a reasonable officer at the time in question would have known that employing a chokehold without a reasonable belief that a suspect posed a serious threat, and deploying a taser on a subdued suspect, were unreasonable

///

///

///

uses of force in violation of the Fourth Amendment.[4] The Court finds that the law is clearly established that force may not be used in these situations.

The relevant standards for use of force, including lethal force, have long been established by *Graham* and *Tennessee v. Garner*, 471 U.S. 1 (1985). Courts have delineated the contours of the law governing the use of force necessary to effectuate an arrest — that is, a police officer cannot use unnecessary, let alone, intermediate and lethal force, on a suspect who has been restrained and no longer presenting an imminent danger to the officer's or others' safety. *See, e.g., Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1059 (9th Cir. 2003) (officers who continued to press their weight on suspect who was handcuffed and lying on the ground, so that he had trouble breathing, employed force that was "clearly constitutionally excessive."); *Wade v. Fresno Police Dep't*, No. 1:09-CV-0599 AWI-BAM, 2012 WL 253252, at *15-16 (E.D. Cal. Jan. 25, 2012) aff'd, 529 F. App'x 840 (9th Cir. 2013) (collecting cases from other circuits discussing the use of tasers on handcuffed subjects); *Coley*, 799 F.3d at 541 ("Chokeholds are objectively unreasonable where an individual is already restrained or there is no danger to others").

Neither of the violations here concerns a nuanced area of law that would require further clarification. *Saucier*'s requirement that the asserted right be clearly established "does not mean that the very action at issue must have been held unlawful before qualified immunity is shed." *Wall v. County of Orange*, 364 F.3d 1107, 1111 (9th Cir. 2004). On the contrary, officers "can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *see also Deorle v. Rutherford*, 272 F.3d 1272, 1286 (9th Cir. 1997) ("Otherwise, officers would escape responsibility for the most egregious forms of conduct simply

///

---

[4] Moreover, with respect to Officer Rowe's application of a chokehold, material factual disputes preclude resolution of whether a reasonable officer would have known that employing a chokehold was an unreasonable use of force. *Blankenhorn,* 485 F.3d at 477.

14

because there was no case on all fours prohibiting that particular manifestation of unconstitutional conduct.").

### C.    Municipal Liability

The Supreme Court has held that a municipality can be liable under 42 U.S.C. § 1983 if an official policy or custom directly caused the violation of an individual's constitutional rights. *See Monell v. Dep't of Social Services*, 436 U.S. 658, 690-91 (1978). "It is only when the execution of the government's policy or custom . . . inflicts the injury that the municipality may be held liable under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (citations and internal quotations omitted). However, a municipality cannot be held liable just because it employs an officer who commits a constitutional tort. *Hervey v. Estes*, 65 F.3d 784, 791 (9th Cir .1995) (citation omitted). The discretionary actions of municipal employees, even when unconstitutional, generally are not chargeable to the municipality under § 1983. *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir.1992). Indeed, a single constitutional deprivation ordinarily is insufficient to establish a longstanding practice or custom. *See Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999) (citations omitted).

#### 1.    Policies

Newport has not offered any evidence connecting the alleged unconstitutional conduct with the City's policies. Defendants have produced policies evidencing that Sparks police officers are only allowed to use chokeholds in instances where deadly force would be authorized, and only then as a last resort. (Dkt. no. 76-10 at 36.) Defendants have also produced policies specific to the use of tasers. These policies limit the use of tasers to dangerous persons or situations, and specifically instruct officers to consider whether their target is handcuffed. (Dkt. no. 76-10 at 45). In short, the City's policies do not appear to be connected with the violations at issue, and Newport has not offered a plausible theory supporting any connection.

///

///

### 2.  Failure to Train

"[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton*, 489 U.S. at 388. To show deliberate indifference in this case, Plaintiff must demonstrate that the City "was on actual or constructive notice that its omission would likely result in a constitutional violation." *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1145 (9th Cir. 2012) (citations and internal quotations omitted). Though not required, "a pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference." *Id.* (citations and internal quotations omitted).

#### a.  Tasers

The City trains officers on when and how to use tasers, and Officer Lake received training. (Dkt. no. 86 at 20-21.) Newport has not identified how a failure in training caused Officer Lake to fire his taser after Newport was allegedly restrained. Nor has Newport identified a pattern of similar violations, or any other reason the City would have been on notice. Indeed, Newport intimates that Officer Lake fired the taser a second time as a punitive measure. This is the type of discretionary action contemplated by *Gillette* and *Christie*, rather than the type of action resulting from a failure to train contemplated by *City of Canton*.

#### b.  Chokeholds

The City does not train its officers on the technique of applying chokeholds, but rather it classifies chokeholds as deadly force and allows officers to utilize them only in the face of death or serious bodily injury. (*Id.* at 21-22.) Newport argues this position amounts to a lack of training under *City of Canton*. While it is true that the City does not train its officers *how* to employ a chokehold, it does train its officers *when* to use it. Newport's injury is grounded on a theory that Officer Rowe employed a chokehold when he was not authorized to do so — that is, he employed a chokehold when he did not have a reasonable basis for believing he or his colleagues were in danger of death or

16

great bodily harm. Newport's injury is not based on a theory that Officer Rowe used improper techniques in choking him. Therefore, there is no connection between the City's training methods as they relate to chokeholds and the injury in this case.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of Defendants' Motion.

It is ordered that Defendants' Motion for Summary Judgment (dkt. no. 76) is granted in part and denied in part.

The Motion is granted as to Newport's claims against the City of Sparks, Officer Marconato, Officer Yee, and Sargeant Tracy. The Clerk is directed to enter judgment in favor of these Defendants.

The Motion is denied with respect to Officer Rowe as to his use of the chokehold and Officer Lake as to his second firing of the taser.

DATED THIS 28th day of March 2016.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE